**Opinion filed February 6, 2025**



In The

# Eleventh Court of Appeals

_____

## No. 11-24-00206-CV

_____

## IN THE INTEREST OF A.B., A CHILD

**On Appeal from the 326th District Court**
**Taylor County, Texas**
**Trial Court Cause No. 11063-CX**

## M E M O R A N D U M   O P I N I O N

This is an accelerated appeal from an order in which the trial court, after a de novo hearing, terminated the parental rights of A.B.'s mother.[1]  The mother filed a notice of appeal.  Appellant challenges: (1) the trial court's denial of her motion to extend the dismissal date; and (2) the sufficiency of the evidence to support the trial court's finding that termination of her parental rights is in the child's best interest. We affirm the trial court's order of termination.

---

[1]We use initials to refer to the child.  *See* TEX. R. APP. P. 9.8(b).

*Termination Findings and Standards*

The termination of parental rights must be supported by clear and convincing evidence. TEX. FAM. CODE ANN. § 161.001(b) (West Supp. 2024). To terminate one's parental rights, it must be shown by clear and convincing evidence that the parent has committed one of the acts listed in Section 161.001(b)(1)(A)–(V), and that termination is in the best interest of the child. *Id.* § 161.001(b)(2). Clear and convincing evidence is "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.* § 101.007 (West 2019).

In this case, the trial court found clear and convincing evidence establishing that Appellant committed at least one of the acts listed in Section 161.001(b)(1). Specifically, that Appellant committed the acts described in subsections (D), (E), (O), and (R), respectively, by:

(1) knowingly placing or knowingly allowing the child to remain in conditions or surroundings which endangered the physical or emotional well-being of the child;

(2) engaging in conduct or knowingly placing the child with persons who engaged in conduct which endangered the physical or emotional well-being of the child;

(3) failing to comply with the provisions of a court order that specifically established the actions necessary for Appellant to obtain the return of the child who had been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services (the Department) for not less than nine months as a result of the child's removal under Chapter 262 because of Appellant's abuse or neglect of the child; and

(4) causing the child to be born addicted to alcohol or a controlled substance, other than a controlled substance legally obtained by prescription.

2

*See id.* § 161.001(b)(1)(D), (E), (O), (R). The trial court further found, pursuant to Section 161.001(b)(2), that termination of Appellant's parental rights was in the child's best interest. *See id.* § 161.001(b)(2).

In reviewing a legal sufficiency challenge, we must decide whether "a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.W.*, 645 S.W.3d 726, 741 (Tex. 2022). Cognizant of the required appellate deference to the factfinder, "we look at all the evidence in the light most favorable to the finding, assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so, and disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible." *Id.* (internal quotation marks omitted). "However, we may not disregard 'undisputed facts that do not support the finding,'" and the factfinder is "the sole arbiter of the witnesses' credibility and demeanor." *Id.* (quoting *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002) then quoting *In re J.F.-G.*, 627 S.W.3d 304, 312 (Tex. 2021)). As such, when considering the credibility of the evidence presented, we may not substitute our judgment for that of the factfinder. *J.F.-G.*, 627 S.W.3d at 316.

In assessing whether the evidence is factually sufficient, we weigh the disputed evidence that is contrary to the finding against all the evidence that favors the finding. *In re A.C.*, 560 S.W.3d 624, 631 (Tex. 2018). We give due deference to the finding and determine whether, on the entire record, a factfinder could reasonably form a firm belief or conviction about the truth of the allegations against the parent. *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009); *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002); *In re L.C.C.*, 667 S.W.3d 510, 512 (Tex. App.—Eastland 2023, pet. denied).

With respect to the best interest of a child, no unique set of factors need be proved. *L.C.C.*, 667 S.W.3d at 513; *In re C.J.O.*, 325 S.W.3d 261, 266 (Tex. App.—

Eastland 2010, pet. denied). And the best interest determination does not restrict the proof to any specific factor or factors. *In re D.M.*, 58 S.W.3d 801, 814 (Tex. App.—Fort Worth 2001, no pet.). However, courts may use the non-exhaustive *Holley* factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These include, but are not limited to: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans for the child by these individuals or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Id.*

The absence of evidence of some *Holley* considerations does not preclude the factfinder from reasonably inferring or forming a strong conviction or belief that termination is in the child's best interest. *C.H.*, 89 S.W.3d at 27. The best interest analysis evaluates what is in the best interest of the child, not the parent. *In re E.C.R.*, 638 S.W.3d 755, 767 (Tex. App.—Amarillo 2021, pet. denied) (citing *In re B.C.S.*, 479 S.W.3d 918, 927 (Tex. App.—El Paso 2015, no pet.)).

The factfinder may measure a parent's future conduct by her past conduct and determine whether termination is in the child's best interest. *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied); *In re D.S.*, 333 S.W.3d 379, 384 (Tex. App.—Amarillo 2011, no pet.). The factfinder may infer that a parent's past conduct that endangered the safety and well-being of the child may recur in the future if the child is returned to the possession of the parent. *In re J.D.*, 436 S.W.3d 105, 118 (Tex. App.—Houston [14th Dist.] 2014, no pet.); *May v. May*, 829 S.W.2d

4

373, 377 (Tex. App.—Corpus Christi–Edinburg 1992, writ denied). Additionally, the factfinder may infer from a parent's past inability to meet the child's physical and emotional needs an inability or unwillingness by the parent to meet the child's physical and emotional needs in the future. *J.D.*, 436 S.W.3d at 118; *see also In re A.S.*, No. 11-16-00293-CV, 2017 WL 1275614, at *3 (Tex. App.—Eastland Mar. 31, 2017, no pet.) (mem. op.).

*The Evidence Presented at Trial*

On April 15, 2023, A.B. was born premature, weighing just over three pounds. Drug testing conducted at delivery and in the days thereafter revealed that A.B. and Appellant were positive for methamphetamine, amphetamines, and cannabinoids. A.B. spent the first month of her life in the hospital, and the Department initiated an investigation, during which Appellant admitted to using methamphetamine and marihuana while pregnant with A.B.

On May 15, 2023, two days before A.B. was discharged from the hospital, the Department filed its original petition seeking temporary managing conservatorship of A.B. and the termination of Appellant's parental rights, and it placed A.B. with a foster family in Comanche, Texas. The trial court modified and approved Appellant's Family Plan of Service on July 7, 2023. Among other requirements, Appellant was ordered to obtain safe, stable housing and legal employment, abstain from using illegal substances, and attend parent-child visitation.

Appellant spent the next several months "couch surfing." The permanency case manager explained that Appellant was living in "different places." Appellant also testified that when she "was doing the couch surfing thing," she "wouldn't stay long" in one place. Appellant then "moved into [a] camper . . . [for] a couple months." She was only employed from sometime in January 2024 to February or March 2024. Using various excuses, Appellant also cancelled most of her scheduled

visits with A.B., despite the Department providing transportation for her, and despite the foster parents driving from Comanche to Appellant in Abilene. On one occasion, the foster parents were fifteen minutes away from Abilene with A.B. for a visit with Appellant, and Appellant called to cancel. They offered to drive by Appellant's location so she could briefly see A.B., but Appellant told them not to do so. The foster parents recalled another visit to which Appellant "show[ed] up smelling of mari[h]uana." On February 28, 2024, the trial court suspended Appellant's visitation because she had not seen A.B. since December 10, 2023.

Appellant consistently tested positive for methamphetamine, amphetamine and marihuana from A.B.'s birth until March 2024, and admitted to using drugs during the pendency of the case. On April 16, 2024, Appellant went to Serenity House, a residential treatment facility in Abilene, for thirty days. When she was discharged on May 14, 2024, she began residing in "a sober living home," and remained there until the final termination hearing on July 8, 2024.

When the parties appeared for the final termination hearing, Appellant urged her motion to extend the automatic dismissal date. Appellant informed the trial court that she was "[eighty-three] days sober," and requested additional time "to show the [trial court] and the Department all of the progress and the effort she's made to be reengaged with her services." Appellant's counsel conceded that Appellant was "wrong in waiting so long . . . [b]ut, again, that's . . . what addiction can do." The Department opposed the extension because Appellant "wait[ed] to go to inpatient [treatment] [eleven] months after" the case began.

The trial court deferred ruling on the extension and proceeded to trial, but clarified:

> [I]f, at some point during the trial, I feel like I've heard . . . what I need to hear to think an extension is appropriate, then I'll stop the hearing at that point and make the ruling on the extension. If I don't hear it, then

I'll defer the decision on the extension once the testimony has ended. But, ultimately, I think this is a best interest case . . . I have to ask what's in the best interest of [A.B.] And the fact that we've gotten to this point, in and of itself, raises that question. And so . . . I think I just have to hear the evidence. I don't think I've got enough that I can make the decision right now.

Appellant testified on both days of the final hearing. She acknowledged that A.B. was removed because she "was positive for methamphetamines and mari[h]uana," and stated that she knew she "shouldn't have been using" during pregnancy. Appellant claimed, however, that the last day she used methamphetamine and marihuana was April 15, 2024, which is also A.B.'s first birthday. She sought inpatient treatment at Serenity House the following day.

Appellant made progress toward completing her service plan requirements; she completed her required parenting classes, a psychological evaluation, and individual counseling. Prior to inpatient treatment, Appellant completed her substance abuse assessment, but there was no recommendation therefrom. Appellant later revealed that she had been dishonest during the assessment because, according to Appellant, she "really believed that [she] could beat it on [her] own." She stated that she "had beat this [fifteen] years prior. Changed [her] people, places, and things," but "at the time, [she] didn't understand this disease." Appellant likewise admitted to dyeing her hair in violation of the trial court's order in the service plan.

Appellant stated that "[c]hildren are not allowed" in the sober living home, but that she "just recently got an approval to move into a two bedroom," and will "move in on August [first]." On the second day of trial, Appellant testified that she was merely "looking into" securing a two-bedroom apartment. She stated that she owed "about a $2,300 debt . . . on a previous rent fee . . . [and] once that is paid, [she] can move in." Appellant purportedly began working at a restaurant a few days

before the final hearing, where she "discussed moving into a service lead position" with work "hours that are needed to take care of a baby and young children."

The permanency case manager testified that A.B. is still with her foster family in Comanche and is doing well. She "can stand up," she recognizes people, is playing with toys, and is "happy at her placement." He testified that the foster family has provided safety and stability for A.B., and are willing and able to adopt her. The Department also presented the testimony of A.B.'s foster father, who reiterated that he and his wife hope to adopt A.B. and believe it is in her best interest to remain with them. He testified that their eleven-year-old daughter "[l]oves [A.B.] to death," and is a "[b]ig sis" to her. Appellant admitted in her testimony that "it would be traumatizing" to A.B. if the foster parents were no longer in her life.

Appellant presented additional testimony from Richard Kennedy, the owner of the sober living home where Appellant resides, as well as her recovery coach, her sponsor, and her cousin. Kennedy attested that Appellant "is [ninety] days clean and sober," and stated that "the only thing" that would show that she has been "able to completely put [her drug use] in the past and show stability . . . is time." The trial court did not expressly rule on Appellant's motion to extend the automatic dismissal date. Rather, it terminated Appellant's parental rights under Section 161.001(b)(1)(D), (E), (O), and (R), and found termination to be in the best interest of the child. This appeal followed.

*Best Interest of the Child*

In her second issue, Appellant contends that the evidence presented at trial was insufficient to prove by clear and convincing evidence that the termination of her parental rights was in the best interest of A.B. "'[B]est interest' is a term of art encompassing a much broader, facts-and-circumstances based evaluation that is accorded significant discretion." *In re Lee*, 411 S.W.3d 445, 460 (Tex. 2013)

(quoting *Holley*, 544 S.W.2d at 371–72). Giving due deference to the trial court, as we must, we hold that, based on the evidence in the record and the application of the *Holley* factors, the trial court could have reasonably formed a firm belief or conviction that termination of Appellant's parental rights was in the best interest of A.B. *See Holley*, 544 S.W.2d at 371–72.

Appellant's argument relies on the purported lack of evidence of each *Holley* factor, but evidence of each factor is not required to support a best-interest finding. *In re S.R.*, 452 S.W.3d 351, 366 (Tex. App.—Houston [14th Dist.] 2014, pet. denied); *In re S.O.*, No. 05-22-01019-CV, 2023 WL 2237084, at *11 (Tex. App.—Dallas Feb. 27, 2023, no pet.) (mem. op.). We note at the outset that the absence of evidence regarding some of these factors does not preclude a best-interest finding, "particularly if [the] undisputed evidence shows the parental relationship endangered the child's safety." *In re N.T.*, 474 S.W.3d 465, 477 (Tex. App.—Dallas 2015, no pet.). Consequently, "evidence relating to one single factor may be adequate in a particular situation to support a finding that termination is in the best interests of the child." *In re J.S.*, 687 S.W.3d 541, 552 (Tex. App.—Eastland 2024, no pet.) (quoting *In re K.S.*, 420 S.W.3d 852, 855 (Tex. App.—Texarkana 2014, no pet.)).

Evidence that is relevant to Section 161.001(b)(1) termination grounds may also be relevant to the determination of the child's best interest and can therefore be considered by the trial court in its best-interest analysis. *See id.*; *see also In re T.B.*, No. 09-20-00172-CV, 2020 WL 6787523, at *8 (Tex. App.—Beaumont Nov. 19, 2020, no pet.) (mem. op.) ("The factfinder may consider prior CPS history of neglect, drug abuse, or lack of care for the children"). In this regard, Appellant does not contest the trial court's findings under Section 161.001(D), (E), (O), and (R). Consequently, those findings are binding on this court as valid grounds for

termination. *See In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003); *In re J.G.*, 592 S.W.3d 506, 506 n.2 (Tex. App.—Waco 2019, no pet.). The trial court could properly consider the evidence that supported its endangerment findings under subsections (D) and (E), including Appellant's history of drug use, and A.B.'s positive drug tests in determining whether the termination of her parental rights was in the best interest of A.B. *See C.H.*, 89 S.W.3d at 28; *C.J.O.*, 325 S.W.3d at 266. The trial court could likewise consider Appellant's noncompliance with her service plan in making its best-interest finding. *See In re E.C.R.*, 402 S.W.3d 239, 249–50 (Tex. 2013).

Appellant's history of instability and persistent drug use both prior to and during the pendency of the termination suit supports the trial court's best-interest finding. *See In re A.A.*, 670 S.W.3d 520, 534 (Tex. 2023). Among the most concerning evidence was the reasons for the Department's involvement: A.B. testing positive for drugs at birth, Appellant's drug use despite knowing that she was pregnant, and then again with knowledge that her parental rights were at stake. A parent's protracted history of drug abuse is relevant to a trial court's best-interest determination. *See In re R.H.*, 693 S.W.3d 846, 859 (Tex. App.—Fort Worth 2024, pet. denied) ("The trial court could have reasonably determined that Mother's history of drug abuse and unwillingness to effect positive changes in her life was relevant to a best interest finding."); *In re I.N.B.*, 662 S.W.3d 631, 648 (Tex. App.—Beaumont 2023, no pet.) ("Father's long history of drug use, criminal behavior, repeated incarcerations, refusal to take any part in I.N.B.'s life prior to this case, and only minimal involvement after I.N.B.'s removal" contributed to the trial court's finding that termination was in the child's best interest.); *In re C.H.*, No. 04-21-00240-CV, 2022 WL 3908537, at *5 (Tex. App.—San Antonio Aug. 31, 2022, no pet.) (mem. op.).

Further, Appellant's prolonged illegal drug use exposed the child to potential emotional distress and instability. *See C.H.*, 2022 WL 3908537, at *5. For example, Appellant cancelled most of her scheduled visits with A.B. because she was under the influence of drugs, "couldn't clean up fast enough," and did not want to expose A.B. to methamphetamine. Appellant's cousin called it a "selfless" choice for Appellant not to visit A.B. because "it's not in the best interest to go . . . around your child while you're using." But A.B. has never lived with Appellant, and Appellant has not visited A.B. since December 10, 2023, despite the Department's and the foster family's attempts to promote Appellant's relationship with A.B. "[E]vidence of little or no contact with the child . . . weighs heavily in favor of a trial court's best interest finding," as it is "significant evidence of parental indifference." *In re A.J.D.-J.*, 667 S.W.3d 813, 823–24 (Tex. App.—Houston [1st Dist.] 2023, no pet.).

Irrespective of Appellant's intentions, her drug use directly resulted in her inability to provide A.B. with a safe and stable home, and her prolonged absence from A.B.'s life. *See In re J.A.R.*, 696 S.W.3d 245, 257 (Tex. App.—Houston [14th Dist.] 2024, pet. denied) (parents' years of drug use supported the trial court's best-interest finding). Appellant's conduct permitted the rational inference that A.B. would be subjected to a life of uncertainty and instability, and endangerment of her physical and emotional well-being if she were returned to Appellant. *See J.S.*, 687 S.W.3d at 552 (evidence that is relevant to a termination ground may also be relevant to the child's best interest); *see also J.O.A.*, 283 S.W.3d at 345 & n.4; *In re R.R.A.*, 687 S.W.3d 269, 281 (Tex. 2024) ("When a pattern of drug use is coupled with credible evidence of attendant risks to employment, housing, and prolonged absence from the children, a factfinder reasonably can find endangerment to the child's physical or emotional well-being."). Appellant's addiction history also exposed A.B. to an unacceptable risk that Appellant may be impaired or imprisoned, which

11

weighs in favor of finding that termination of Appellants' parental rights was in A.B.'s best interest. *See J.S.*, 687 S.W.3d at 551–52; *In re Z.J.B.*, No. 14-18-00759-CV, 2019 WL 347474, at *5, 7 (Tex. App.—Houston [14th Dist.] Jan. 29, 2019, pet. denied) (mem. op.) (a parent's single positive drug screen and his failure to submit to three additional drug screenings suggested continued illegal drug use by him and weighed in favor of the trial court's best-interest finding); *see also In re J.M.T.*, 519 S.W.3d 258, 269 (Tex. App.—Houston [1st Dist.] 2017, pet. denied) ("[p]arental drug abuse reflects poor judgment and may be a factor to consider in determining a child's best interest").

Additionally, the uncontroverted evidence shows that Appellant did not have a safe or suitable home for A.B. Before inpatient treatment, Appellant went from "couch surfing," to a camper for a month. After treatment, Appellant lived in a home that did not allow children. She was still living there at the time of the final hearing and presented nothing more than transitory hope of securing a safe and appropriate home for her and the child. Whether the child will be returned to a safe and stable home environment is a vital issue for any court's consideration. *See* FAM. § 263.307(a) (West 2019) ("[T]he prompt and permanent placement of the child in a safe environment is presumed to be in the child's best interest."); *J.D.*, 436 S.W.3d at 119 ("A parent's inability to provide adequate care for her children, unstable lifestyle, lack of a home and income, lack of parenting skills, and poor judgment may be considered when looking at the children's best interest."). Thus, Appellant's uncertain living situation supports the trial court's best-interest finding. *See J.W.*, 645 S.W.3d at 742; *In re Z.B.*, No. 11-24-00061-CV, 2024 WL 3995522, at *5 (Tex. App.—Eastland Aug. 30, 2024, no pet.) (mem. op.) ("'Couch hopping' is irrefutably unsafe and unsuitable for a child.").

12

Appellant's persistent drug use has also affected her relationship with her two older daughters and her stepdaughter. In 2019, her husband at the time went to prison, leaving Appellant with the three children. Appellant "gave her oldest child" to her mother because she could not afford to take care of her. Then, after losing her home in October 2022, "she fell into substance use disorder with methamphetamine." When her husband was released from incarceration, she let him take custody of their other daughter and her stepdaughter. The trial court reasonably concluded that the evidence clearly and convincingly demonstrated that it was not in A.B.'s best interest to return to Appellant, who had historically resorted to relinquishing her children to the care of others in difficult times. *See C.H.*, 89 S.W.3d at 28 (past performance as a parent "could certainly have a bearing on [a parent's] fitness to provide for" her child).

Furthermore, Appellant's noncompliance with her service plan—which required that she maintain sobriety, legal employment or other income, a safe and child-appropriate home environment, and attend parent-child visitation—was also a permissible consideration for the trial court in making its best interest determination. *See E.C.R.*, 402 S.W.3d at 249–50. Regardless of whether Appellant was "in [her] darkest of the dark time," the fact remains that A.B. could not depend on Appellant to be a parent for the first year of her life. The trial court was permitted to "infer from [Appellant's] failure to take the initiative to complete the services required to regain possession of [her] child that [she] does not have the ability to motivate [herself] to seek out available resources needed now or in the future." *See J.M.T.*, 519 S.W.3d at 270.

Appellant's lifestyle changes, including sobriety, began less than three months before the final hearing. With the impending termination hearing, Appellant abstained from illicit drug use for eighty-three days. However, the trial court could

13

have reasonably determined that those improvements, while admirable if true, were too little too late given the overwhelming evidence of Appellant's lifetime of poor choices. *See N.T.*, 474 S.W.3d at 479 ("[R]ecent improvement alone is not sufficient to avoid termination of parental rights.") (quoting *In re K.D.C.*, No. 02-12-00092-CV, 2013 WL 5781474, at *16 (Tex. App.—Fort Worth, Oct. 24, 2013, no pet.) (mem. op.)); *see also In re A.C. v. Tex. Dep't Fam. & Protective Servs.*, 577 S.W.3d 689, 705–06 (Tex. App.—Austin 2019, pet. denied) ("positive changes that the father had made in the 'few months' prior to trial occurred too late in the case to demonstrate that the father could provide the child with the long-term safety and stability that the child would need"); *In re J.V.*, No. 02-19-00392-CV, 2020 WL 1540865, at *7 (Tex. App.—Fort Worth Apr. 1, 2020, no pet.) (mem. op.) (mother's "attempts to fix herself" were "too little and too late"). The long-term safety and stability that A.B. would need required serious consideration by the trial court when deciding the best interest of the child. Despite Appellant's recent but brief stretch of sobriety, her previous inability to sustain prolonged periods of sobriety permitted the inference that Appellant's drug use could recur in the future if A.B. were returned to her. *See A.C.*, 577 S.W.3d at 705 ("A factfinder is entitled to give 'great weight' to a parent's drug-related conduct, as it is considered a 'significant factor' supporting termination.") (quoting *In re E.R.W.*, 528 S.W.3d 251, 266–67 (Tex. App.—Houston [14th Dist.] 2017, no pet.)); *In re R.W.*, 129 S.W.3d 732, 741 (Tex. App.—Fort Worth 2004, pet. denied) (factfinder is "not required to ignore a long history of dependency and destructive behavior merely because it allegedly abated before trial").

Again, Appellant does not contest the trial court's findings under Section 161.001(D), (E), (O), and (R). As set forth above, those findings are binding on this court as valid grounds for termination. *See A.V.*, 113 S.W.3d at 362; *J.G.*,

592 S.W.3d at 506 n.2. The evidence that supported the trial court's termination of Appellant's parental rights pursuant to subsections (D), (E), (O), and (R) likewise support its best-interest finding. The evidence in support of the uncontested findings demonstrates Appellant's inability to provide a stable home and meet A.B.'s emotional and physical needs now and in the future, that Appellant is a danger to the child's physical and emotional well-being now and in the future, and that the existing parent-child relationship is not a proper one. *See Holley*, 544 S.W.2d at 371–72. Therefore, given the evidence supporting these findings, the trial court could have formed a firm conviction or belief that terminating Appellant's parental rights to A.B. was in the child's best interest.

Finally, given "the child-centered focus of the best-interest inquiry," we may not discount or minimize A.B.'s positive strides since removal. *See J.W.*, 645 S.W.3d at 747; *Holley*, 544 S.W.2d at 371–72. Although A.B. is too young to express her desires, she has bonded with the foster family, is well cared for by them, and has spent almost no time with Appellant. *See In re A.R.D.*, 694 S.W.3d 829, 842 (Tex. App.—Houston [14th Dist.] 2024, pet. denied). The undisputed evidence shows that A.B. is thriving in the care of her foster parents—even Appellant testified that "[t]hey have loved and protected [A.B.] . . . they're doing an amazing job." By contrast, Appellant has not demonstrated an ability to provide a safe, drug-free home environment for A.B.

The trial court, as the trier of fact, is the sole judge of the witnesses' credibility. *J.F.-G.*, 627 S.W.3d at 312. We are not at liberty to disturb the determinations of the trier of fact so long as those determinations are not unreasonable. *Id.* at 311–12; *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). Considering the foregoing and giving due deference to the trial court's determinations, we conclude that the evidence is legally and factually sufficient to

support the trial court's finding that termination of Appellant's parental rights is in the best interest of A.B. *See J.W.*, 645 S.W.3d at 741; *Holley*, 544 S.W.2d at 371–72.

Accordingly, we overrule Appellant's second issue.

*Denial of Motion for Extension*

In her first issue, Appellant asserts that the trial court abused its discretion by denying her requested extension of the automatic dismissal date pursuant to Section 263.401 of the Family Code. *See* FAM. 263.401 (West Supp. 2024).

We review a trial court's decision to grant or deny an extension requested under Section 263.401(b) for an abuse of discretion. *L.C.C.*, 667 S.W.3d at 516. A trial court abuses its discretion by acting unreasonably or arbitrarily, or by misapplying the law to the established facts of the case. *In re D.W.*, 249 S.W.3d 625, 647 (Tex. App.—Fort Worth 2008, pet. denied); *see Huynh v. Blanchard*, 694 S.W.3d 648, 674 (Tex. 2024); *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 242 (Tex. 1985). A trial court does not abuse its discretion "when it simply exercises that discretion in a different manner than reviewing appellate courts might." *Low v. Henry*, 221 S.W.3d 609, 620 (Tex. 2007).

The legislature enacted Section 263.401 to encourage the prompt resolution of suits in which the Department requests termination of the parent-child relationship. *In re G.X.H.*, 627 S.W.3d 288, 292 (Tex. 2021). In this regard, in a parental termination proceeding, a trial on the merits must commence by "the first Monday after the first anniversary of the date the court rendered a temporary order appointing the department as temporary managing conservator." FAM. § 263.401(a). The failure to do so without a valid extension under subsection (b) deprives the trial court of jurisdiction over the suit, resulting in its automatic dismissal. *Id.*

Section 263.401(b) permits the trial court to retain the suit on its docket only if the trial court finds that: (1) "extraordinary circumstances necessitate the child remaining in the temporary managing conservatorship of the department"; and (2) "continuing the appointment of the department as temporary managing conservator is in the best interest of the child." *Id.* § 263.401(b). In determining whether extraordinary circumstances exist in a case in which the trial court orders a parent to complete a substance abuse treatment program, the trial court "shall consider whether the parent made a good faith effort to successfully complete the program." *Id.* § 263.401(b-2). Further, pursuant to subsection (b-3), a trial court shall find that extraordinary circumstances exist under subsection (b) if:

(1) a parent of a child has made a good faith effort to successfully complete the service plan but needs additional time; and

(2) on completion of the service plan the court intends to order the child returned to the parent.

*Id.* § 263.401(b-3). Relying on Section 263.401(b-2) and (b-3), Appellant claims that she made a good faith effort to complete her service plan and successfully completed a court-ordered substance abuse treatment program.

When determining whether an extension is justified by extraordinary circumstances and is in the best interest of the child, the focus is necessarily on the needs of the child. *See In re J.S.S.*, 594 S.W.3d 493, 501 (Tex. App.—Waco 2019, pet. denied); *In re A.J.M.*, 375 S.W.3d 599, 604 (Tex. App.—Fort Worth 2012, pet. denied). "[A]ctions that are considered to be the parent's fault will generally not constitute extraordinary circumstances." *In re M.S.*, 602 S.W.3d 676, 680 (Tex. App.—Texarkana 2020, no pet.) (internal quotation marks omitted) (mother's confinement was the result of her actions, and not an extraordinary circumstance).

17

First, regarding (b-2), the trial court did not order Appellant to complete a substance abuse treatment program. As such, subsection (b-2) is inapplicable. *See* FAM. § 263.401(b-2).

Further, in this circumstance, the trial court would be justified in concluding that Appellant had not demonstrated that she had made a good faith effort to complete her service plan requirements under subsection (b-3). Appellant did not work toward achieving sobriety and completing her court-ordered tasks until after A.B. turned one year of age, which was a little less than three months prior to the final hearing. "[T]he prompt and permanent placement of the child in a safe environment is presumed to be in the child's best interest." FAM. § 263.307(a). Appellant repeatedly admitted fault in her belated commitment to sobriety and parenthood. Appellant is responsible for her failure to timely begin her service plan requirements, which does not constitute an extraordinary circumstance. *See, e.g.*, *In re J.M.*, No. 02-21-00346-CV, 2022 WL 872542, at *4 (Tex. App.—Fort Worth Mar. 24, 2022, no pet.) (mem. op.) ("Father's inability to complete services because of and after his incarceration was the consequence of his own actions," thus not an extraordinary circumstance.); *In re C.G.*, No. 02-20-00087-CV, 2020 WL 4518590, at *3 (Tex. App.—Fort Worth Aug. 6, 2020, pet. denied) (mem. op.) ("Generally, parents cannot blunder their way into extraordinary circumstances."); *see also In re H.S.*, No. 02-23-00367-CV, 2024 WL 1207304, at *16–17 (Tex. App.—Fort Worth Mar. 21, 2024, pet. filed) (mem. op.) (mother's failure to timely begin working her service plan did not constitute an extraordinary circumstance) (citing *In re O.R.F.*, 417 S.W.3d 24, 42 (Tex. App.—Texarkana 2013, pet. denied)).

Appellant argues on appeal that "adding a few months to the case [would] not have [had] a practical impact on [the child]," so she should have been given the opportunity to "prove her sobriety, restart visitation, and . . . reunite with the child."

But Appellant's contention demonstrates her continued disregard of the child's needs and best interest, as she has done from the inception of this case.

According to the Department's affidavit in support of removal, it was Appellant who ultimately "requested the Department take custody of [A.B.]." We recognize that the Department's affidavit is "not evidence for all purposes," but, in part, it "shows what the trial court relied on in determining" whether an extension was necessary due to extraordinary circumstances and the child's best interest. *See E.C.R.*, 402 S.W.3d at 248 (considering the Department's affidavit in support of removal, "even if not evidence for all purposes," because it "show[ed] what the trial court relied on in determining whether removal was justified) (collecting cases).

Since removal, Appellant "has not maintained a relationship with [A.B.]" Throughout the time that the case was pending, the Department, the foster parents, and the trial court were "[e]xtremely patient" with Appellant. Appellant admitted "that she was wrong in not attending visits," but explained her reasoning:

> [I]f I was using, I did not want that contact with her. Methamphetamines does, you know, seep out of your pores. And holding the baby, it would have transferred to her. If I was really sad or super stressed, I also know, like, the baby can feel that. So I wanted it to be, like, a happy time if I was going to be there. There was a couple of issues, like, with transportation. I had someone I was relying on regularly that -- that quit being able to take me. And then when it got to the point that, like, the Department was going to transport me, it just -- it was just really matters of being, like, if I was high, I did not want to be there. I didn't want them to see me high, and I didn't want that contact with my daughter.

Although Appellant, her cousin, and her sponsor described Appellant's voluntary absence as selfless, her prior continued drug use was not. Appellant testified that she has "known all along that [she] needed to change." She also knew and understood that in July 2023, at the latest, the Department could seek termination of her parental rights if she did not complete her service plan requirements. But she

19

waited until her daughter was over a year old to begin any effort toward sobriety and parenthood. Yet, even by the time of the final hearing, Appellant could not commit to parenting A.B. without heavily relying on the Department and the foster parents. She testified that she had no intention of taking custody of A.B. "today or tomorrow or anything like that." Rather, she wanted a "slow transition," and for the child "to gradually have more time with [Appellant], and [she] want[ed] the [foster parents] to be in [A.B.'s] life regardless."

Appellant's choices before and after A.B.'s birth resulted in Appellant's absence from A.B.'s life, and the inability to provide needed support. The trial court could have reasonably determined that subjecting the child to ongoing uncertainty would continue to negatively affect her physical and emotional well-being. *See In re E.C.*, No. 02-20-00022-CV, 2020 WL 2071755, at *6–7, *9–10 (Tex. App.—Fort Worth Apr. 30, 2020, no pet.) (mem. op.). The trial court did not abuse its discretion when it denied Appellant's request for an extension.

Accordingly, we overrule Appellant's first issue.

*This Court's Ruling*

We affirm the order of the trial court.

W. BRUCE WILLIAMS
JUSTICE

February 6, 2025

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.